Jack Stanislaw, J.
Petitioners move for an order pursuant to article 78 of the CPLR, to direct the Suffolk County Civil Service Commission and the New York State Civil Service Commission to declare null and void a written promotional examination, taken by petitioners for Sergeant for the Suffolk County Police Department on May 20, 1967, and to direct that a new promotional examination for the position of Sergeant be given. Respondent Suffolk County Civil Service Commission cross-moves for an order dismissing the petitions.
Petitioners are Patrolmen of the Suffolk County Police Department. The examination was given by the Suffolk County Civil Service Commission under the auspices of the New York *926 State Civil Service Commission. The claim, in essence, is that the examination was unfair and not a true test of their ability because 15 of the 75 questions which comprised the subject examination were contained in another examination given in November of 1966 by the Suffolk County Civil Service Commission (also under the auspices of the New York State Civil Service Commission) for the position of Detective Investigator for the Suffolk County District Attorney’s office.
Petitioners contend that many of the Patrolmen who took the May, 1967, Sergeant’s examination were also eligible for and participated in the November, 1966, Inspector’s examination and that those who took both examinations had an unfair advantage over those who, like petitioners, took only the Sergeant’s examination. They further claim prejudice because under the rules of the Suffolk County Police Department, Patrolmen may take time off to participate in a promotional examination (such as the May 20, 1967, Sergeants’ examination) but not for one which is not considered promotional (such as the November, 1966, Inspector’s examination), and since they were not off duty when the Inspector’s examination was given, they did not take that examination. On the other hand, those Patrolmen who were off duty at that time could and many of them did, take both. They further claim that those who took the November, 1966, examination were afforded the opportunity to see the correct answers within 10 days thereafter. For that reason, they contend the May, 1967, Sergeant’s examination was violative of the underlying principles of the Civil Service Law in that it did not afford all eligible applicants an equal opportunity to secure appointment and promotion. At first blush, it would appear there is merit to that contention.
The following factors, however, must be taken into consideration. Each of the examinations was taken by hundreds of applicants. In all, there were 44 candidates who competed in both examinations. From an analysis made by the Test Development Bureau of the Department of Civil Service to determine the extent of the advantage, if any, which the 44 repeaters had over those who took only the May, 1967, promotional examination, it appears doubtful that petitioners would have scored any better if they, too, had been exposed to both examinations. Many of the repeaters who failed the first examination also failed the second; only one repeater passed the second who would have failed the first; and two repeaters scored lower on the second than on the first. Those candidates who took the November, 1966, examination had no way of knowing if any or which ones of the questions given on that examination would *927 be repeated on the subsequent examination, given 6 months later. The questions were not of the type that would be memorized verbatim. They tested the applicants’ skills with prepared written material. Moreover, it has been determined that even if the petitioners who took the May, 1967, examination were allowed full credit for the 15 repeated questions, none would have received a passing grade on that examination.
Further, questions in civil service examinations are frequently repeated in other examinations, not only because the preparation of each new question is costly, but because in the considered opinion of the Civil Service Commission it results in greater efficiency. As stated by the commission, in response to an employee’s inquiry as to why applicant may not retain copies of test questions: ‘ ‘ First, the value of a test question as a measure of an applicant’s capabilities cannot be accurately appraised until the question has actually been used in one or more tests and exposed to appeals by candidates. As each new test question is used in civil service examinations the results are carefully analyzed to determine whether the -question is free of defects and — more importantly — whether or not it has served to separate the more capable from the less capable candidates. Because candidates -are not allowed to take away or copy test questions, those which prove effective in actual competition are available for reuse. Approximately 80 per cent or more of the questions in State civil service examinations have been used before ” (State Personnel News for October, 1967, a periodical distributed to all State employees).
Petitioners did not file an appeal to the New York Civil Service Commission’s Committee on Appeals for administrative review prior to commencing this proceeding. Thus, they failed to exhaust the administrative remedies available to them, a necessary prerequisite to the commencement of an article 78 proceeding.
Rule XI(5) (b) of the Suffolk County Civil Service Rules for the Classified Civil Service of Suffolk County provides: “ (b) For examinations prepared and rated under Section 23(2) of the Civil Service Law, the State Civil Service Commission shall have sole and exclusive authority to correct any errors in rating upon appeal or otherwise. The review of papers by candidates and the filing of appeals in Such examinations shall be governed by the rules and regulations of the State Civil Service Commission and Department.”
Based upon the foregoing, we cannot hold that the repetition of the 15 disputed questions in the examination taken by petitioners was an improper exercise of discretion on the part of *928 respondents, that the examination was given in had faith, or that petitioners were unreasonably aggrieved by reason of the repetition. The Civil Service Commission of this State is granted broad powers of latitude and discretion for good reason (Matter of Rosenstrauch v. Reavy, 174 Misc. 446).
The court cannot substitute its judgment for that of the commission’s, unless it clearly appears it was arbitrary, capricious or unreasonable (People ex rel. New York & Queens Gas Co. v. McCall, 219 N. Y. 84).
As stated in Davis v. Wiener (260 App. Div. 127, 130), “ The fairness of the consideration of the merits of applicants for [civil service] positions and the protection of those in civil service tend to assure the State and its civil subdivisions as employers that their employees will he of the type best fitted to carry out the duties of the positions in which they are employed * * * a commission charged with the examination and certification of persons seeking employment may use the methods the commission deems best adapted for the determination of fitness and, unless it be shown that the methods used are capricious, unreasonable, unfair or arbitrary, the judgment of the commission ordering or making the examination must stand against attack in the courts. ’ ’
One cannot expect examinations to he given in a vacuum. Respondents’ judgment in utilizing repeated questions on examinations appears not only practical, but reasonable and within the proper exercise of their discretionary powers. Moreover, as indicated by the analysis made by the Test Development Bureau of the Department of Civil Service, the repetition of the 15 questions did not prove to be prejudicial to petitioners (since they would have failed the test even if allowed full credit for those questions) or to any other applicant. Accordingly, the petitions are in all respect dismissed.